Finch, J.
There are two theories of the facts of this case, one technically true but substantially an error; the other really true but formally open to criticism; and upon our choice between them will be quite certain to depend the ultimate conclusion. One theory interposes between the parties really interested and actually contracting the corporate entities of the five original companies, and behind that legal shelter seeks to protect the company in default to its stockholders and turn them over for relief to their own original company after by agreement all its functions had ceased, although possibly it may not be altogether and hopelessly dead. The defense is not meritorious. It simply attempts to substitute circuity of action for direct responsibility, and requires ns to blind our eyes with the the theoretical abstraction so as to shut out the obvious and undoubted truth. We have of late refused to be always and utterly trammelled by the logic derived from corporate existence where it only serves to distort or hide the truth, and I think we should not hesitate in this case to reject the purely technical defense attempted. For nothing is plainer than that the transfer of the property and business of the five original companies to the new company to be organized was-upon an agreement between the corporators of them all that payment for the transfer should be made by apportioning to the original stockholders the whole of the stock of the new company not reserved for the use of the treasury. That agreement is not denied by anybody, and every word and every act of all the companies, and of each and all of the corporators, have proceeded upon that assumption. The companies, as corporate entities, could not alone and without the consent of their constituent members make a transfer which was intended to end their whole practical business existence, and it was agreed by such companies when they made the written contract among themselves, that the refusal of any one corporator in any one company to give his consent to the transfer should turn the proposed sale into.a mere lease. The authority of the corporations to sell and to make a valid agreement of sale to which the company could become a party, was upon the explict and understood condition that the new stock should be issued in exchange for the old stock to the several cor *330 porators, and the necessary consent of the stockholders was given upon that express condition. How fully and perfectly this was understood is obvious from the fact that the offers of the new company to issue its stock to the plaintiffs were always coupled with the condition that the latter should surrender their old stock and cease to be stockholders in the old companies at the moment when they became such in the new. Anthony swears that when he gave his consent to the sale the Hamlins agreed that he should have the one hundred and twenty-five shares that he claimed as his due proportion of the Glucose Company stock, and that he -gave his consent on that basis and upon that condition. None of the Hamlins carry their denial beyond the question of amount. 'They dispute that, and that only. William Hamlin, in his letter ■of April 11, 1888, explicitly admits mailing ninety shares to Anthony as being those agreed upon between the parties. There is nowhere a word said by anybody looking to an issue of shares to the corporation instead of to their stockholders.
Armed with this limited and conditional authority from their ■corporators, the companies took up their first duty, which was to .agree among themselves as to the proportion of stock to be allowed to each as the gross share to which, under the existing parol agreement, their individual members in proper proportions would be entitled! For that purpose the written contract was made. It did settle the gross share of the Firmenich corporation, and the amount of stock to remain unissued, and the amount to go to the corporators of the four Hamlin companies in the lump of one hundred thousand shares, but left unsettled the gross proportion ■of each of the latter, and so necessarily the share of each individual corporater. The reason of this omission is evident. The Hamlins were the only stockholders in two of the companies, and ■almost the sole owners of stock in the other two. The only necessary distribution would be to fix the shares of Locke, Easton and Anthony, which, it was assumed, could be done by agreement, and -.so the gross share of the four Hamlin companies was allotted to them in one amount.' Allotted is the word used in the contract instead of issued or paid. It was consistent with the fundamental .and existing parol agreement among the corporators. It did not mean, in violation of that agreement and in contempt of the specific -authority conferred, that the new stock should be issued to the old ■companies. It could not mean any tiling so absurd. They were powerless to surrender the stock of their shareholders in exchange and to say that the new stock was to be issued to the shells of corporations having no stockholders to whom it could distribute it, unless to the new Glucose Company itself, which alone would possess the surrendered certificates, is to say that the individual ■corporators meant to throw away, and utterly waste their rights. Nothing of the kind was meant, and the word allotted was’ fitly used to fix the gross share of the four companies, and not authorize, in violation of the fundamental agreement, a payment or issue To them as partners or tenants in common or in any manner ■whatever.
When the Glucose Company came into existence it had made *331 no contract and was bound by no obligation. It was free to buy out the five companies on any terms it could secure, but chose to adopt those offered by such companies and their corporators.. It knew accurately what those terms were in all their details. Almost ■every member of the board bad been a party to the arrangement .and participated in framing it, and so, with full knowledge, it' adopted the contract offered, completely and as a whole. It formally accepted the preliminary contract made between the'companies knowing that it vested only on condition of an issue of stock to the corporators, and in buying later the plant at Tippecanoe it formally agreed to give its stock to the person interested. It is thus a mistake to say that the Glucose Company dealt only with the five corporations. It dealt also and necessarily with the individual corporators whose consent it required, aud obtaining it on •condition of payment to them, and with full knowledge of that •condition, became obligated to each stockholder to issue to him his due and proportionate share of Glucose Company stock.
It we admit that the defendant may not have been bound to decide proportions among individuals, the result is not changed. No dispute about them arose until it sprang up between the Hamlins on the one side and Anthony on the other. The latter claimed 1,250 shares on the. original and 125 shares on the reduced capital ;as payable to him; the former insisted that only 900 shares on one basis and ninety on the other, were due Anthony, and it is now fully conceded that the plaintiffs are entitled on a proper distribution to at least ninety shares of the stock of the new company as their due and just portion. That question as against the Glucose Co. is settled. It is true that Anthony claimed more, but that the just proportion is at least ninety shares nobody disputes or has ever disputed. It was clearly error to refuse the plaintiffs that -except upon the theory that the Glucose Company came under no contract obligation to the individual stockholders. I think it did, .not only by reason of the primary Contract of.the stock- • holders whose benefits it secured and took, but also because by its own conduct it has recognized and adopted that contract. It has issued its stock to every individual stockholder in all the five companies, and never to either one of the companies or by their corporate direction, for there has been since the sale no -corporate action of either and its own construction of its own duty should be conclusive.
Let us examine the defense interposed somewhat more closely.
It is said the Glucose Company bought solely of the corporate entities, and as a matter of law was bound only to pay them. That might have been. If the corporations alone could have made the contract, if the individual stockholders had no privity •of contract with the Glucose Company, the contention would have been sound, at least in a court of law. But none of those conditions exist, as 1 have already sought to show, and the Glucose Company did owe a contract duty directly to the corporators, and stands before us claiming to have tendered full performance of that very contract duty.
It is said that the Glucose Company issued its allotted stock *332 to the Leavenworth Company, and that ended its contract obligations. The proof relied upon is a formal certificate, No. llr of 99,400 shares issued to the four-Hamlin companies, as partner or holders in common. It was wholly unauthorized. The-companies, as I have said, had no right to a share of that stock. They never requested its issue, they never accepted it, and never had it at all. William Hamlin, secretary of the new company and of four of the old ones, all powerful and multiform, and multiudinous of office as he was, neverethless was-not the Leavenworth Company, Its board of directors never-met to give a direction about the issue of stock to it, or to-any one in its behalf, to accept a tenancy in common creating, possibly, an unlawful partnership, to receive payment of- what-was not due to it, to surrender shares it did not have, to return a certificate of which it knew nothing, or to decide what stockholders were entitled to new stock, and in what proportions. All this, the power of William Hamlin, secretary, and as such, authorized to keep the minutes of meetings which had ended, assumed to do. He had no such authority, and the Glucose pompany obeyed-him at its peril.
But certificate No. 11 was never a payment or issue of stock, effectively, at all. It was merely a temporary setting aside, or allotment of shares oat of which, in due season, the actual issue by way of payment was to be made to the individual corporators concededly entitled to receive that payment. Wm. Hamlin, secretary, surrended it to Wm. Hamlin, secretary, and then told Wm. Hamlin, secretary, to whom the Hamlins directed it to be issued, which was to the Hamlins mainly, except the ninety shares. I do not mean to complain of or criticise that action. These gentlemen who so controlled their corporation practically owned it, and had an honest right to dictate, but the company must take the consequence of its obedience.
It is said that the four companies and the Hamlins should have been made "parties defendant. I do not see that the corporations have the slightest interest in this controversy. The general term thinks them dissolved and dead. I do not go so far; but if the hollow and empty shells had life enough to stand up before the-court as parties defendant, at least they had no interest in the dispute and are in no manner affected by its results.
Nor were the Hamlins necessary parties. They have received, their full shares of stock. Giving ninety shares to the plaintiffs will not affect the admitted proportions of a single stockholder, all of whom have their shares, and at least ninety are left, and there is treasury stock much beyond any amount claimed.
That defense was suggested on the argument, and pressed as a justification for refusing a delivery to plaintiffs, and was that they ought to pay to the Hamlins about $11,000 as their part of the burden of the debts of the Leavenworth Company. There were such debts, but there is ho finding of their amount, nor who. paid them, nor that they have been paid at all, nor that the Hamlins made such payment. The debt may be wholly unpaid, or canceled in the process of consolidation, or assumed and paid by the *333 Glucose Company out of earnings. And even if the plaintiffs are, or ought to be, bound for the payment claimed, there is neither plea, finding nor proof that it was an agreed precedent ■condition of plaintiffs’ right to their due proportion of stock in the consolidated company, nor that any assessment had been lawfully made against the Anthonys or that there was any lien upon the stock due them.
Equally without foundation is the contention that a certificate to the plaintiffs for ninety shares of the Glocuse stock was delivered to the Leavenworth Company for them and that such company was alone in default for the withholding of the stock. There is no proof and no finding that such certificate was ever delivered to the Leavenworth Company or received or accepted by it, or that it became in any manner possessor of the stock. On the contrary, the finding is that it was delivered to William Hamlin without specifying any representative or official character. That he held it as agent of the Glucose Co. and tendered it as such agent is made certain by his letter inclosing it in which he says “we” have just been able to issue the stock, and “we” will change its form if necessary. “ We,” can only mean the Glucose Co. and the certificates in Hamlin’s hands were still held by that company and tendered by it to the plaintiffs. And besides the certificates if they had been handed to the Leavenworth Co. were clogged with an unlawful condition which the Glucose Co. had no right whatever to impose.
We think, therefore, that the order of the general Term was right and should be affirmed, with judgment absolute for the plaintiffs upon the stipulation. We are all of opinion, however, that under the peculiar and exceptional circumstances of the litigation, that final judgment can only be for the ninety shares and the dividends and interest thereon. The referee denied plaintiffs’ right wholly. The general term affirmed such right only as to the ninety shares and left the balance finally defeated. We affirm that order on the same theory, holding that plaintiffs’ claim, as we sustain it, is limited to the ninety shares, and the judgment absolute must recognize what has been decided to be the plaintiffs’ right.
The order should be affirmed, with judgment absolute against the defendant on its stipulation.
All concur, except Gray and Haight, JJ., not voting.
Ordered accordingly.